Case number 23-5258, the United States of America v. Corey Stephens, or I admit not to exceed, 15 minutes per side, Mr. Frank W. Heff, Jr. for the appellant. Good morning. Good morning, your honors. May it please the court, I'm Frank Heff, I represent the appellant, Corey Stephens, and your honor, I'd like to reserve three minutes for rebuttal. Very well. Thank you. Your honors, the Plainview Doctrine does not justify the search of Mr. Stephens' truck or the seizure of his cell phone. The facts here show two things. Number one, Officer Harper was not legally present in the truck when he found the phone, and number two, he didn't have a lawful right of access to the phone. The district court found that Officer Harper entered that truck for one reason and one reason only, and that was to search for weapons. And the court relied on Michigan v. Long to justify Harper's entry into the truck. But the facts here don't show that the police had a reasonable belief that Mr. Stephens was dangerous and that he had immediate control. When Stephens was in the back of the police car being questioned before the search, was he effectively under arrest? Is your position that he was effectively under arrest? Is your position that he wasn't effectively under arrest, but even under Long, the search was still not justified? Well, your honor, he's in a custodial setting because Agent Curtis said with regard to that they weren't going to let Mr. Stephens go back to the truck, have any access to the truck. He wasn't going to go back there, and if he wanted something out of the truck, the police would get it for him. He was at least in custody. He wasn't going anywhere. Are you arguing, isn't there quite a bright line distinction between whether he's actually under arrest or just being detained, in which case we apply the Long? There is that distinction. Which side of the line do we fall on? I'm saying he was arrested. When he was in Agent Harper's car being questioned, he was, I believe he was He wasn't technically arrested. You say that he was maybe implicitly arrested. Basically, he was just in custody, right? Yes. So are you saying any time somebody's taken into custody that they are implicitly arrested? Certainly. For Miranda purposes, if you're in custody, even if you're not arrested. Well, they took him into custody to question him. The questionings could have indicated that maybe he wasn't guilty of the child pornography charges that they later brought. That the questioning could have cleared up that, okay, I guess we really don't have probable cause to arrest him, to charge him. So guess what? We're going to let him go. We don't have enough evidence. And they let him go. Well, you still got the car there and you have the potential. We actually have the weapon in there. The weapon was found, which the officers suspected. So, I mean, it's not certain that the questioning would have necessarily led to his arrest and to him being hauled off to the jail. It could have resulted in the other way of letting him go, right? But the problem here is obviously the gun in the truck. Yeah. And that's why they want to do a protective sweep of the truck. But they have no right to do it. Okay. Well, we're going to decide whether they do. Is that a legal question? Well, why do they not have a right? Because he's effectively under arrest, in which case there's no concern he's going to go back to the truck? Because, number one, under Michigan v. Longley, they haven't shown that he's dangerous. And, number two, he is not. They just have to have reasonable suspicion that he hid something in the car. And they go back to the car for their safety. That's what I think what the protective sweep is all about, for the safety of the officers, because you don't want him to potentially get access to that gun and to kill the officers. That's right. But still, even if there's a reasonable suspicion of what, Your Honor, they have to have reasonable suspicion that he's dangerous. Dangerous? No. They had reasonable suspicion he was fiddling with something in the console, looked like he was hiding something. It's all in the district court's opinion here. And the officers were right. Their reasonable suspicion was correct because there was a gun in the console. And, I mean, it's not only they speculated, but their speculation or whatever, their suspicions were correct. Right? Right? Well, the district court found that Officer Harper's search of the truck was based exclusively on those furtive movements. Sure. And that the furtive movements established reasonable suspicion for the search of the truck. But I think there's a problem with that analysis. What the district court is saying in that instance is that furtive movements alone justify a weapon search in the truck. And this court should not, based on the facts in this case, this court should not accept that conclusion. The court should require that the officers show more additional facts or additional information that creates a reasonable suspicion that the suspect's dangerous or can gain immediate access to a weapon. It wasn't reasonable suspicion. Well, I get back to reasonable suspicion. I think it starts with Terry versus Ohio. And if I recall that case right, the people there basically were looking through the windows of a department store and not doing a heck of a lot more than that. And they said, well, there's reasonable suspicion that criminal activity may be afoot. And the standard for reasonable suspicion is incredibly low. And to say that there's not reasonable suspicion here, that he may be hiding a weapon in the console after he does all these suspicious movements, as the police approach, the police can see him, he's reacting. It's almost like flight. The defendant flees from the officers. Well, there's a presumption of there's some guilt there. When they see an officer and the defendant reacts, well, here he sees the officer and he does reactions in the car. And to tie them together is not a big stretch, I don't think. Well, Your Honor, I think, first of all, Michigan v. Long is essentially Terry applied to vehicle searches. But still, you have to have those other factors, reasonable and articulable facts to justify the reasonable suspicion. And it's just not here at this point. Look at the background information. Well, what do they have? You can consider the nature of the offense. It's a serious offense, isn't it? Sure, it's a serious offense. And this is not like pulling him over for a defective taillight. I mean, they were searching for, I mean, they were going to execute a search warrant of his house for materials relating to a felony. That's right. It's a serious. Why doesn't that play into the factors in terms of furtive movements? They know they're dealing with someone who they think has committed a serious felony. Look at the nature of the crime, I think, Your Honor. It's a different story, for example, if you've been involved in some type of assault or – Child pornography involves assault, doesn't it? Not with a weapon. Look at the – I know Your Honors have looked at it, but the search warrant application, the affidavit, the lengthy affidavit that Agent Curtis filed, it's 28 pages. It goes on and on about child pornography offenses. And what it doesn't say is that firearms or other weapons are tools of the trade or that people involved in those offenses are likely to be armed. And so I think there's a real distinction. What about just evidence of criminality? What about just they know, setting aside the warrant or whether it's a long search, they know that this individual is probably engaged in child pornography. They know he's probably using his phone to do it. While he's driving, they see him on the phone. They see a cord in his car. They see him arguably tucking the phone between the seats. Why is it not enough on that information alone to search the car? They don't have probable cause to search at that point. First of all, from all that information they have? With all that information. Because they have a search warrant. And what does the search warrant say? It says – I'm setting aside the warrant. I'm just setting aside the warrant. Because you're going to say, well, it says the house and it's not the car. But the warrant does say the phones. It doesn't – It does say – yeah. They have authority under the search warrant to search for phones. In the house. In the residence. What if they pulled him over on the street before he got to his house? And they had all this information we talked about. You don't think at that point they have enough to search his – No. They see him on the phone. They have all this information. He's been using his phone for child pornography. They see a cord. They see him tucking the phone. That's not enough to search the car. That's innocuous behavior. I mean, how many times are people on the phone driving a car? There's a – this driver was known – so much so they were able to get a warrant, but even setting that aside, there's a lot of information that he was engaged in child pornography and using his electronic devices. That's true. Yeah. That's true. But just because he's on the phone – and may I point out, Your Honor, that when Officer Harper was following him from his place of work to his house, he never saw him on the phone. But to address your hypothetical, I still think even under your hypothetical, that doesn't constitute reasonable suspicion that the phone is being used for criminal purposes. Can I go back to the first point I was asking about? So if he's effectively under arrest, then the officer's search rights, at least immediately, are different, right, than if it's just reasonable suspicion and they're worried that he'll be released and go back to the car and get a weapon. And so when he's in the car, he's getting these questions. The officers say, we're never going to let him go back to his car. Is he functionally under arrest, which then would change – my mind would change the legal framework we apply. If he's not going back – if he's being arrested and he's not going back to the car – Well, I know, but what do you say happened? What's your – first off, whether he's arrested or not, is that a legal question for us? I think it probably is. I think it is. Yeah. So what's your answer to that question? My answer is that he was under arrest. Effectively under – or effectively detained in a way that he was not going to be allowed back to the car. He's not going to go back to that truck. Effectively. That's right. That's not really how you're arguing – that's not really how you've argued the case for the most part, at least this morning. You seem to be saying that there was some ability for him to go back to the car, but they didn't – even then, there wasn't enough to believe there was contraband or weapons there. Even when Judge Griffin was giving, I guess, the hypothetical about him being found innocent, none of this happened, he's going to be able to go back to the car. Well, so be it. He still has a right to have – there's nothing to show that he has illegal possession of a gun. He's a prohibited person or anything. If there's a gun back in the car and he's been cleared of any criminal offense, he should be able to do that. The other thing I wanted to point out, too, is with regard to – oh, I see I'm out of time. Go ahead. Last point. Let me call the Court's attention to the McCraney case that I cited in the brief. There, the Court – this Court essentially held that furtive movements alone do not justify a weapon search in a vehicle. I think the facts there are very close. Those two men in that case were taken from the car. They were at the back of the car when the gun was found under the seat, and this Court held that just based on acknowledged furtive movements, that wasn't enough to create reasonable suspicion. Thank you. You'll have your three minutes rebuttal. Thank you. Good morning. Good morning. May it please the Court, Amanda Gregory for the United States. I'll start with the Court's questions to counsel regarding the arrest. And Stephen's motion to suppress, on page 89 of the record, he concedes in the motion to suppress that he was not arrested at the time the phone was seized, and uses that in essence to argue against the idea that it is a search incident to arrest. I mean, there's a formal, actual arrest, and then there's what I'm calling sort of a constructive arrest where you're detained in a way that you're not going to be allowed to return to the vehicle. And in the record when Officer Curtis is questioned about whether he'd be allowed to return to the vehicle, the answer is no, but the reason is because of the gun. So it was because they had already identified this gun that they wouldn't allow him to go back to the vehicle. But they did say if he needed something from the vehicle, they would get him access, and he was not. The context of the answer to that question was, would you have let him go back, and the officer, they'd already found the gun. Of course we wouldn't let him go back. Yes. Wasn't there a conflicting testimony? Wasn't there a part where they said we were never going to let him go back? I do not recall that. I recall Officer Curtis repeating a couple times because of the gun, and Harper would not have been with him at the time, so he wouldn't have been determining whether he was going back. Harper testified that when he had already gone into the vehicle, he did not yet know whether he was going to be arrested, and that was why he didn't seize the phone. I also would like to distinguish United States v. McCraney, which was cited in Stephen's brief. So why isn't this effectively an arrest? He's put in the car. There's at least some testimony that maybe he's never going to get to go back. They read Ms. Miranda writes. He starts to confess. I forget what else happened, but your position was that still wasn't, we're still in the world of long. One more had to happen other than formally. Well, there are things that could have happened that might have kept him from arresting him. If he had said, there's another guy who lives in the house, and he has access to my computer and devices. They actually believed whatever story he had, they may not have arrested him. They may not have taken him to jail. They may not have charged him at that point. They may have said, we don't have enough evidence to arrest him yet, and we have to have probable cause to arrest him. So I think the fact that he's in custody, he's being questioned, it's not necessarily fouls that he'll never be released again at that moment. Yes, that is also a key part to his. Didn't he confess? Yes. That was after the search, right? That was after the search. They got into the car to get the gun before the search, and then the phone was seized, maybe contemporaneous with the search. Was there some debate in the test, the evidence, about exactly the tick-tock of when all these things happened? I'm sorry? The timing, was it disputed at all about when some of these things happened, when the search happened vis-a-vis when he was read his rights or when he confessed? I believe he was there. Did he raise his marina rights before they searched the vehicle? No. No, they were not, because that I believe happened once he was inside the other officer's vehicle. The search to get the gun happened while he was standing near the cab of the vehicle. We had testimony from the officer who found the gun, or not the gun, well, found the gun, actually, that at that point they didn't know whether they were going to arrest. Yes, that is what Officer Harper said, and that is why this is squarely within Michigan v. Long, where he may at some point be allowed to go back to the vehicle. They don't know what's going to happen. This is not a traffic stop like in McRaney. It is an inherently dangerous situation where there is a search warrant being executed, and while they do not have an arrest warrant yet and they have not arrested him, they certainly do have probable cause to arrest him, and he knows that they know what he did. A significant part of the dangerousness of someone who is being arrested comes from the antagonistic relationship that being arrested puts that person in with the police officer. That, along with the nature of the crime being investigated, has some bearing on this analysis of reasonable suspicion? Yes, yes, I agree, Your Honor. I mean, is that a way to distinguish from the McCrary case, that that was just a busted taillight or something like that? Yes, again, because those were just traffic offenses that would likely result in a citation that couldn't be arrested for, whereas this is a very horrible crime with very stiff penalties and with a lot of shame associated with it, so it increased the potential for... More reason to use a gun to get out of it in this situation than there would be in a traffic violation situation. Yes, yes, we agree with that. It increased the potential for dangerous behavior from Stevens to the officers, to the others, even to himself. So based on the crime and the circumstances, they had reasonable suspicion he was dangerous, and that is added to the fact that they saw this tucking motion as if concealing something by the console, which, as Officer Harper testified, his first thought was it was a weapon. This is the exact physical motion that the defendant embossed used when he was inserting something or reaching between the car seat and the console. And in that case, the Sixth Circuit said that the officers had reason to believe that the defendant in that case might threaten his safety. So because there was reasonable suspicion to believe Stevens is armed and dangerous, Officer Harper was justified in getting in the car to search for a weapon. Once he was in the weapon, or once he was in the truck, the phone was in plain view. He was lawfully inside the truck when he accessed the phone. The defense cites McClavin and says in their brief that he should have gotten a warrant or they should have gotten a warrant after this. McClavin applies to a house, and there are other cases in the Circuit, Boone v. Spurgess and U.S. v. Dixon, where they said this would not apply to a car exactly for the reasons stated in the automobile exception. So there was no need for him to get a warrant once he saw the phone. He could lawfully access the phone and seize it. For these reasons, the district court got it right, and we believe you should affirm. Judge McKinley made findings of fact and conclusions of law, and I would think that we review his findings of fact under a clear error standard, would we not? Yes. Okay, page two of his opinion, he says, Once Agent Curtis escorted Stevens to his police cruiser, Officer Harper climbed into Stevens' automobile to search for weapons. So is that a finding of fact that this happened right after he's escorted to the cruiser? That's when the search occurred? Is that a finding of fact that we give deference to? Insofar as it is supported by the record, yes.  How about the actions that occurred? Are there, what the judge found, which he said created reasonable suspicion, what actions do you say are factual findings that we have to give deference to, as opposed to the ultimate conclusion of law that we reviewed de novo? We do agree with the point that Stevens has made, that Officer Harper did not testify that he saw the sucking motion himself, and even though that is in the findings of fact, that is not supported by the record. But what is supported by the record is that Officer Harper did see some fiddling in the console area, a tucking motion as if someone was hiding something. As if somebody were hiding something, is that a finding of fact? I believe that was a quote from the testimony. Okay, so, I mean, did the judge say, is there any finding there that we give deference to, I guess I'm saying? The other side is basically saying all these actions, we ought to review de novo and find that they're not sufficient. I guess my question is, are there some findings of what happened here that derives the level of factual findings that we give deference to, that's all? Well, yes, that Harper saw the tucking motion concealing something between the seat and the console. Okay, all right, but they concede that, I guess. Yes, and then other than that, the overall factual situation in terms of the, in terms of what is creating the dangerousness, but other than that, I believe the court complies legal analysis de novo. Okay, well, can I, did you have more questions? No, I have another question, but you go ahead. No, go ahead. I'm going to go on to a different area. Okay, all right. So, just to go back to the first statement that you and Judge Griffin were discussing, because the timeline here is so important, and the statement from the district court is, once Agent Curtis escorted Stevens to his cruiser, Officer Harper climbed into the automobile to search for weapons. So, we know Curtis was in the cruiser at the time of the search, but we don't know, this is my point about the tick-tock here, what happened. We know from that statement, I mean, I read that statement to say that Stevens was in the cruiser at the time the search happened, and I think we also know that, like, immediately when he gets into the cruiser, they tell him that we know a lot of what you've done, they read him his rights, he confesses, that all seems to happen relatively quickly. So, how do we know that none of that happened before the, from that statement, how do we know that none of that happened before the officer went into the car and searched it? So, the site here that is in the district court opinion doesn't support that. There is some other information on the page before that that would seem to be consistent with that, where it says at the point where you went and climbed into the vehicle, Mr. Stevens was already detained, correct? Yes, ma'am. And away from the vehicle? Yes, ma'am. But there's, so I guess this goes back to your point earlier, but Officer Curtis, or Agent Curtis had testified that the timeline was that he took the pictures of the stuff that was found in the search before he took Mr. Stevens away from the vehicle. So, I think there was some agreement that the pictures were taken before Mr. Stevens was taken away and because the pictures obviously exist and that they were taken after the search. I'm sorry. Taken away from the scene or taken away into the car? Taken to the car where he was interviewed, taken to Agent Curtis' car, a few cars back to be interviewed. The pictures, so the pictures taken inside Stevens' vehicle? Yes. Oh, so you're saying that he actually entered the vehicle before Stevens was escorted to the police cruiser? Yes. Because that's not what Judge McKinley says here. That's why I was asking, the timeline just seemed very important to me and the timeline seems pretty murky. Thank you. The record could be clearer on some points, but Officer Harper does testify that pictures were taken and Agent Curtis is clear that the pictures were taken before he takes Stevens back to the interview. And during the interview, there's also a reference to, your phone was in the truck, so they'd already done the search before the interview. Okay, so my question pertains to a ground that you did not went on before the court below, but I'm wondering could be relied upon to affirm, which is whether the search warrant itself could validate the search of the phone or finding the evidence in the car based on the way the wording of the affidavit reads. And I'm wondering, is it the government's position that there is, first of all, is that still the government's position that the warrant, or not the warrant, but the warrant itself could justify the search of the vehicle? Yes, and we could also argue that Attachment B of the warrant, or Attachment B was also incorporated into the warrant. Yeah, that's what I was interested in, because it seems like Attachment B talks about premises, whereas Attachment A only talked about residents. But in B, it seems to say that they're talking about premises. But was that argued before, Judge McKinley? Not that specific issue regarding Attachment B. Generally that the search was all justified by a warrant and that the search of the car should have been justified by the Attachment A, which included a photograph of the premises and the listing of the address should have been sufficient to include search of the car. Okay, whether or not the government argued that below, you haven't argued that on appeal, have you? That the warrant itself justified the search of the automobile? No, we have not. But this court could decide to affirm the lower court's decision based on... Well, the lower court said the warrant didn't cover search of the automobile either, right? But affirmed the denial of the suppression. Okay, so the district court rules against you, so the one ruling we have is against you, and you haven't appealed that. I mean, why should we consider unpreserved issues, or unargued issues, I guess? Well, and our argument is that the district court, at least on the reasonable suspicion and plain view exception, is correct. That's what you've argued on appeal. At my point, you haven't argued that at all in your appellate brief. You just brought it up today in response to my question. But you did argue all these things. I mean, the district court says that you argued all these things below, and you just fixed the one that the judge fixed the one that thought was the best ground. So they were raised below. Is that true also for the automobile exception? Yes, it was raised below, and it was mentioned in our brief as well. Should that apply here? Yes, we believe that applies as well. Why? Because there was probable cause to get into the automobile. Under Virginia v. Collins, it's not the same issue of the car being in the curtilage and no one having the right to access it, because they have a right to be there. They have a right to execute the search warrant and secure the premises. They have ample reason to think that Stephen's phone has contraband on it, as detailed in the search warrant, and they know he just got out of the car. That's where he is. That's where he was. People usually keep their phones on them. There's a car charger for the phone, so there's probable cause to believe the phone would be in the car. There's also the tucking. Yes. Okay. Any further questions? All right. Three minutes rebuttal. Just several points, Your Honors. First of all, to address Judge Bush's question about Attachment B, Your Honor, that was limited. So that just described the items to be seized. Attachment A is the one that gave, that told the ---- Well, it says during the execution of the search of the premises described in Attachment A. So it seems to describe the items to be seized. It doesn't define residence in Attachment A to mean premises. It does use the word premises. Yes. And we have case laws saying premises could include the curtilage and all things that are in the curtilage, including cars. But, again, look, the facts here would not justify the search. When you read the search warrant itself and what Attachment A says, the search is limited to the residence. So we would submit that that's as far as the police can go. Two other points to address quickly. One is the matter when those photos were taken. The trooper and Officer Harper, Mr. Stevens complied immediately when they said get out of the truck. They took him back to where the cab and the passenger, the bed of the truck met. And if you look at the pictures of the truck, which are in the defendant's reply, that's a big truck. There's a full-size driver's compartment and a full-size passenger compartment. From there, they took him directly to Officer Curtis' vehicle. And then Curtis said that he went and took photos of the truck before he began questioning Mr. Stevens. Now, I know the timeline still hasn't been nailed down precisely, but that's essentially what it is. The last point that I want to make is with regard to the Mecklevin case. The district court here recognized or I think ignored Mecklevin. Mecklevin says that lawful right of access requires a police officer to get a search warrant if possible before seizing an item in plain view. And the district court here I think conflated both legal presence with lawful right of access. There are two different prongs of the plain view test. But I think when you read the district court opinion, the district court found that Officer Harper legally entered the truck. Of course, we dispute that. But then the court goes on to say he had a lawful right of access. I think he conflated the two. The other thing the district court did was create an exception used to the Mecklevin warrant situation in child pornography cases. It cites that Rosario case. I see that I'm out of time. No, go ahead. He relied on that Rosario case to essentially create an exception to Mecklevin in child pornography cases. But as I point out in the brief, Rosario is a far cry from this case. Rosario is one where numerous individuals had access to that computer that had child pornography. There was a real danger and a real threat that the evidence there could be lost or destroyed. That's not our situation here. Thank you, Your Honor. Thank you for your arguments. I believe that concludes the oral argument docket for this morning. You may adjourn the court.